**Billy Ray KIDWELL, Appellant**

v.

**DEPARTMENT Of the ARMY, BOARD FOR CORRECTION OF MILITARY RECORDS, Appellee.**

**No. 94–5149.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 3, 1995.

Decided June 13, 1995.

Christopher G. Smith, appointed by the court, Washington, DC, argued the cause for appellant. With him on the briefs was Charles F. Lettow, Washington, DC.

Marina U. Braswell, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With her on the brief were Eric H. Holder, Jr., U.S. Atty., and R. Craig Lawrence, Asst. U.S. Atty., Washington, DC. John D. Bates, Asst. U.S. Atty., Washington, DC, entered an appearance.

Before: WALD, WILLIAMS and TATEL, Circuit Judges.

TATEL, Circuit Judge:

Billy Ray Kidwell asked the Army Board for Correction of Military Records to change his military files to indicate a "medical" discharge rather than the general discharge they now reflect. When the Board refused, Kidwell filed suit in the district court under the Administrative Procedure Act. The district court dismissed his suit, concluding that Kidwell's claim was, in essence, one for money damages that he must bring in the Court of Federal Claims. In the alternative, the district court granted the government's motion for summary judgment, ruling that the Board had acted on substantial evidence and in a reasonable manner when it denied Kidwell's request. Although we conclude that the district court should not have dismissed the suit for lack of jurisdiction, we agree with its alternative ruling on the merits, and affirm the decision of the Board.

I.

Billy Ray Kidwell entered active duty with the Army in January, 1968. In August of that year, he was disciplined for being AWOL from his unit for four days. In January of 1969, he was detailed to Vietnam as an automotive repairman. While in Vietnam, he was disciplined for being AWOL for a day. He was also reduced in rank from private first class to private for carrying a pistol without authorization. Kidwell left Vietnam and returned to the United States in December of 1969, where his disciplinary problems continued. He was disciplined for speeding, and then for failing to report to duty. In September 1970, he was charged with being AWOL for several weeks during the summer, at which point he requested a discharge in lieu of a court-martial. The Army agreed, discharging him in October on "undesirable" grounds.

In 1977, Kidwell asked the Army Board for Correction of Military Records to upgrade his discharge to a "general discharge"—a step, but still a significant one, below "honorable." The Board, a civilian body authorized to "correct any military record ... when [it] considers it necessary to correct an error or remove an injustice," 10 U.S.C. § 1552(a)(1) (Supp. V 1993), granted Kidwell's request.

Kidwell now claims that the disciplinary problems leading to his discharge were related to a psychological disorder, "post traumatic stress disorder" ("PTSD"), which he developed while in Vietnam. Many Vietnam veterans have been diagnosed with varying forms of PTSD, which is defined by psychiatrists as "the development of specific symptoms following a psychologically traumatic event that is beyond the range of usual human experience." Michael J. Davidson, Note, *Post–Traumatic Stress Disorder: A Controversial Defense for Veterans of a Controversial War*, 29 Wm. & Mary L.Rev. 415,

421 (1988) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (3rd ed. 1980)). PTSD is triggered by a particularly traumatic "stressor" event. *See id.* According to Kidwell, his "stressor" occurred just two months before his return to the United States, when he observed a friend in his unit commit suicide by firing a grenade launcher into his head.

In the opinion of at least two federal agencies, Kidwell's conduct since his discharge has been indicative of a person afflicted with PTSD. In 1987, the Social Security Administration held a disability determination hearing at which an administrative law judge considered evidence regarding Kidwell's sporadic employment history, his various treatments for physical and psychiatric disorders, and his occasional imprisonment for various thefts and assaults. *See* Kidwell Claim Decision, Office of Hearing and Appeals, Social Sec. Admin., Dep't of Health & Human Servs. (Sept. 11, 1987) [hereinafter SSA Decision], *in* Joint Appendix [J.A.] at 7–14. The record suggests that the ALJ did not consider any evidence from the period prior to Kidwell's discharge, and little evidence from prior to 1974. The ALJ nonetheless concluded that Kidwell was disabled and entitled to disability insurance benefits dating back to October, 1970. In particular, he noted that "[t]he evidence strongly indicates the [applicant's] problems have been so severe as to preclude substantial gainful activity since 1970 when he was discharged from the Army, even though his signs, symptoms, and clinical findings were not diagnosed as [PTSD] until recently." *Id.* at 6, *in* J.A. at 12. The Department of Veterans' Affairs reached a similar conclusion in 1991, although it found only a 30% disability rating. In reviewing that decision, the Board of Veterans' Appeals found that Kidwell's "PTSD has been severe in degree since 1984, and that it probably has precluded him from securing or following a substantially gainful occupation since then." Kidwell Appeal, Bd. of Veterans' Appeals, Dep't of Veterans' Affairs, No. 89–40 917 at 3 (Oct. 5, 1994), *in* J.A. at 58. As a result, it ruled, Kidwell deserved a 100% disability rating. *Id.* at 10, *in* J.A. at 65.

Soon after the Social Security Administration determined that Kidwell had been disabled since 1970, Kidwell filed a second request with the Army Board for Correction of Military Records asking it to change his "general discharge" to a "medical discharge." Although the Board can consider requests filed at any time "in the interests of justice," 10 U.S.C. § 1552(b) (Supp. V 1993), it ruled that no such interests existed in Kidwell's case and concluded that Kidwell had filed his request too late. Kidwell sued. The district court affirmed the Board, but a panel of this court directed the district court to remand the case for the Board to hear Kidwell's request. *See Kidwell v. Surgeon General of the United States,* No. 91–5192, 1993 WL 89062 (D.C.Cir. Feb. 1, 1993).

Reviewing Kidwell's request on the merits, the Board found "no evidence of record which would indicate that the applicant displayed any signs or symptoms of a mental illness [prior to his discharge], or that he was treated for a mental illness during his period of active duty." Kidwell Decision, Board for Correction of Military Records, Dep't of the Army, No. AC89–06719A at 8 (Apr. 7, 1993) [hereinafter Board Decision], *in* J.A. at 37. In support of its conclusion, the Board noted that neither Kidwell nor his Army doctors noted any physical or psychiatric difficulties at the time of his discharge. Although Kidwell complained of "nervous trouble" on a medical checklist he filled out during a routine separation medical exam, he denied having had nightmares, depression, difficulty sleeping, or excessive worry. He also wrote "I'm in good health" on the form. The examining physician concluded that he was "medically fit for any military assignment." *Id.* at 4, *in* J.A. at 33. Kidwell's company commander and other supervising officers concluded that they had no reason to believe that he was "mentally defective, deranged, or abnormal" at the time of his misconduct. *Id.* The Board also reviewed the report of a psychiatric consultant to the Surgeon General who, after reviewing Kidwell's records, concluded that "it would not be possible to support a diagnosis of PTSD at the time of discharge." *Id.* The Board agreed and rejected Kidwell's request.

Acting pro se, Kidwell returned to the district court seeking an order requiring the Board to correct his records. Although Kidwell did not explicitly request monetary relief in his complaint, the government claimed that a district court order requiring the Board to change Kidwell's records to a "medical" discharge would entitle Kidwell to retroactive disability benefits that could exceed $50,000. Because the practical effect of Kidwell's request would be an award of money damages, the government argued, the district court had no jurisdiction over the complaint. Instead, Kidwell had to sue in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491 (1988 & Supp. V 1993). The district court agreed with the government, concluding that it had no jurisdiction to hear the case. Even if it did have jurisdiction, however, the district court concluded that the Board had acted reasonably and on substantial evidence in rejecting Kidwell's request. Kidwell appeals, claiming that the district court did have jurisdiction and that the underlying Board decision was arbitrary and capricious.

## II.

■ The Tucker Act, 28 U.S.C. § 1491, gives the United States Court of Federal Claims jurisdiction

> to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

This grant of jurisdiction to the Court of Federal Claims is "exclusive," but "only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the [Court of Federal Claims]." *Bowen v. Massachusetts,* 487 U.S. 879, 910 n. 48, 108 S.Ct. 2722, 2740, 101 L.Ed.2d 749 (1988); *see also Van Drasek v. Lehman,* 762 F.2d 1065, 1071 n. 10 (D.C.Cir. 1985) (noting that so-called "exclusive jurisdiction" of Court of Federal Claims over Tucker Act claims depends not on language of Tucker Act, but on fact that Congress

rarely grants district courts jurisdiction over such claims). Some courts have held, for example, that 15 U.S.C. § 634(b)(1) gives district courts jurisdiction over claims for money damages against the Small Business Administration. *See Van Drasek,* 762 F.2d at 1071 n. 10 (citing *Munoz v. Small Business Admin.,* 644 F.2d 1361 (9th Cir.1981)). And the "Little Tucker Act" gives district courts concurrent jurisdiction with the Court of Federal Claims in most Tucker Act cases seeking less than $10,000, *see* 28 U.S.C. § 1346(a)(2) (1988), although appeals in almost all such cases go to the Federal Circuit, not the district court's geographical Court of Appeals, *see* 28 U.S.C. § 1295(a)(2) (1988).

■ Finding that the complaint in this case "seeks disability retirement pay of more than $10,000," the district court concluded that Kidwell's suit fell into the category of cases within the sole jurisdiction of the Court of Federal Claims. *Kidwell v. Dept. of the Army,* No. 93cv2238 at 3 (D.D.C. May 16, 1994). Accordingly, the district court dismissed the complaint for lack of jurisdiction. *Id.* at 4. We review the district court's resolution of this purely legal issue *de novo. See Pershing Div. of Donaldson, Lufkin & Jenrette Sec. Corp. v. United States,* 22 F.3d 741, 743 (7th Cir.1994); *FDIC v. Hulsey,* 22 F.3d 1472, 1479–80 (10th Cir.1994).

Kidwell's complaint did not seek any monetary relief. Instead, it asked that "the defendant be required to correct plaintiff's army records to reflect a military retirement in pay grade E–4 [Kidwell's pay grade when discharged] on October 8, 1970 with a 100% disability rating," as well as for "any other relief that he may be entitled to." Complaint, *Kidwell v. Dept. of the Army,* No. 93cv2238 (D.D.C. Oct. 29, 1993), *in* J.A. at 48–49. Jurisdiction, he alleges, was founded on the Administrative Procedure Act, which provides for judicial review, 5 U.S.C. § 704 (1988), and waives sovereign immunity for actions "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702 (1988). Since Kidwell's complaint fulfills the requirements for district court jurisdiction

under the APA and does not explicitly request monetary relief from the United States, jurisdiction under the APA would appear to lie.

■ The plain language of a complaint, however, does not necessarily settle the question of Tucker Act jurisdiction. *See, e.g., Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967–68 (D.C.Cir.1982); *see also Bowen*, 487 U.S. at 916, 108 S.Ct. at 2743 (Scalia, J., dissenting) ("[D]istrict court jurisdiction is not established merely because a suit fails to pray for a money judgment." (citing cases)). This is because plaintiffs can bypass Tucker Act jurisdiction by converting complaints which "at their essence" seek money damages from the government into complaints requesting injunctive relief or declaratory actions. *E.g., Megapulse*, 672 F.2d at 968. Because this forum shopping circumvents a primary purpose of the Act—to ensure that a central judicial body adjudicates most claims against the United States Treasury, *see United States v. Hohri*, 482 U.S. 64, 71–73, 107 S.Ct. 2246, 2251–52, 96 L.Ed.2d 51 (1987) (describing goal of uniformity behind creation of Federal Circuit); *Vietnam Veterans of America v. Secretary of the Navy*, 843 F.2d 528, 534 (D.C.Cir.1988) (recognizing the Tucker Act's interest in uniformity)—we have stated that "[j]urisdiction under the Tucker Act cannot be avoided by ... disguising a money claim" as a claim requesting a form of equitable relief. *Van Drasek*, 762 F.2d at 1071 n. 11. To enforce this prohibition on the creative drafting of complaints, we look to the complaint's substance, not merely its form. *See, e.g., Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 361 (5th Cir.1987), *cert. denied*, 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988). Absent other grounds for district court jurisdiction, a claim is subject to the Tucker Act and its jurisdictional consequences if, in whole or in part, it explicitly or "in essence" seeks more than $10,000 in monetary relief from the federal government. *See Megapulse*, 672 F.2d at 967–68; *Heller, Ehrman, White & MacAuliffe v. Babbitt*, 992 F.2d 360, 363 (D.C.Cir. 1993) (Plaintiffs "may not, by creatively framing their complaint, circumvent a congressional grant of exclusive jurisdiction."); *see also Hahn v. United States*, 757 F.2d 581, 589 (3d Cir.1985) (concluding that district court did not have jurisdiction over request for money damages in complaint, but allowing it to retain jurisdiction over nonmonetary claims also requested); *cf. Vietnam Veterans*, 843 F.2d at 535 (noting that courts are divided, in cases where plaintiffs request both monetary and equitable relief, over whether Court of Federal Claims jurisdiction precludes district court from hearing simultaneous request for equitable relief or vice-versa, and that this court has not decided issue).

■ A plaintiff does not "in essence" seek monetary relief, however, merely because he or she hints at some interest in a monetary reward from the federal government or because success on the merits may obligate the United States to pay the complainant. *See Vietnam Veterans*, 843 F.2d at 534 ("It is ... clear that a claim is not for money merely because its success may lead to pecuniary costs for the government or benefits for the plaintiff."). Even where a monetary claim may be waiting on the sidelines, as long as the plaintiff's complaint only requests non-monetary relief that has "considerable value" independent of any future potential for monetary relief, *see Francis E. Heydt Co. v. United States*, 948 F.2d 672, 677 (10th Cir.1991) (internal quotation marks and citation omitted)—that is, as long as the sole remedy requested is declaratory or injunctive relief that is not "negligible in comparison" with the potential monetary recovery, *see Hahn*, 757 F.2d at 589—we respect the plaintiff's choice of remedies and treat the complaint as something more than an artfully drafted effort to circumvent the jurisdiction of the Court of Federal Claims. *But see Vietnam Veterans*, 843 F.2d at 535 (noting, but not deciding, that pursuit of equitable relief in district court may preclude plaintiff from later seeking monetary relief in Court of Federal Claims). In such cases, even if the plaintiff filed the complaint with an eye to future monetary awards, a district court with otherwise appropriate jurisdiction may hear the claim and grant the proper equitable relief.

We applied these principles in *Vietnam Veterans of America v. Secretary of the Navy, supra,* where the plaintiffs had been dismissed from the Navy under less-than-honorable conditions solely because of their possession or use of drugs while in the service. The petitioners alleged that after their discharge the Navy issued a series of memoranda that advocated a more lenient position with respect to servicemembers who had been discharged for drug violations and that, if applied to them, would have led to an upgrade in their discharge status. Seeking such an upgrade, they sued the Navy. According to the Navy, since a "direct, automatic, and unavoidable consequence" of such an upgrade would be a payment to the petitioners for leave time that they had accrued at the time of their dismissal, 843 F.2d at 534, the case was a suit for money damages against the United States under the Little Tucker Act, meaning that the Federal Circuit, not this circuit, had jurisdiction over the appeal.

Rejecting the Navy's argument, we held that inquiries into the consequences of plaintiff victories—even "automatic" consequences—would "take us outside the record sought to be reviewed and thereby complicate the jurisdictional issue." *Id.* We concluded that "[i]t would be foolish to impute to Congress an intent to require an appellate court to go outside the record to ascertain its own jurisdiction." *Id.* at 535. Although we recognized that a victory for the plaintiffs may well have required the government to pay them money, the Tucker Act was not implicated as long as that requirement flowed not from the district court's exercise of jurisdiction but from the structure of the benefits program. *Id.* We therefore reaffirmed what we labelled a "bright line rule," under which we consider cases to be based on the Tucker Act's waiver of sovereign immunity only if the plaintiff seeks money or the district court grants it. *Id.*

We "sharpened" this bright line rule in *Wolfe v. Marsh,* where, as here, the plaintiff had requested a discharge in lieu of a court-martial on disciplinary violations, and later asked the Board to change his records. *Wolfe v. Marsh,* 846 F.2d 782, 783 (D.C.Cir.

1988), *aff'g on reh'g* 835 F.2d 354 (D.C.Cir. 1987), *cert. denied,* 488 U.S. 942, 109 S.Ct. 366, 102 L.Ed.2d 355 (1988). As here, the Board refused. We affirmed the Board's decision, but Wolfe requested rehearing, arguing that the Federal Circuit had appellate jurisdiction because his suit was one for money damages under the Little Tucker Act. He argued that his opposition to the government's district court motion to dismiss for lack of jurisdiction anticipated money damages both because it calculated how much back pay he was due—less than $10,000, thereby saving the district court's jurisdiction under the Little Tucker Act—and because it offered to amend his complaint to waive any damages over $10,000. On rehearing, we noted that despite these explicit statements regarding monetary relief, Wolfe's *complaint* "contained neither a claim for money damages nor a suggestion that the requested relief would entail such damages." 846 F.2d at 783. Because the "plain terms of [Wolfe's] complaint demanded only equitable relief," *id.* at 784, the "bright line rule" established in *Vietnam Veterans* meant that Little Tucker Act jurisdiction was not implicated. In reiterating that rule, we recognized that we were endorsing a "strict pleading requirement," but concluded that its application would "allow [ ] this court to determine easily and definitively whether it has jurisdiction." *Id.* at 785 n. 4.

■ With respect to Tucker Act jurisdiction, the facts of this case do not differ significantly from those in either *Vietnam Veterans* or *Wolfe.* As in those cases, the plaintiff here has not explicitly requested monetary relief. As in those cases, granting the relief requested would offer a direct nonmonetary benefit to the plaintiff because resting Kidwell's discharge on medical grounds would lift some of the shame associated with failing to receive an honorable discharge. *See generally* Christopher H. Lunding, *Judicial Review of Military Administrative Discharges,* 83 Yale L.J. 33, 35 (1973) (noting the stigma that flows from a general discharge). As in those cases, any monetary benefits that may flow from Kidwell's victory would not come from the district court's exercise of jurisdiction, but from the structure of statutory and regulatory re-

quirements governing compensation when a servicemember's files change. And as in those cases, we could refuse jurisdiction only by going outside the record to review the process by which Kidwell might receive past disability payments, a process that is apparently far from automatic, since Kidwell would have to file a separate claim with the Secretary for the benefits, 32 C.F.R. § 581.3(g) (1994), and since the amount due him would be reduced by the yet-to-be-determined amount of any VA benefits that he receives. *See* 10 U.S.C. § 1212(c) (Supp V 1993); Reply Brief at 4 n. 2.

The government argues that this case is different because Kidwell *has* explicitly requested money damages in his complaint. In support of this argument, the government points to the complaint's request for reinstatement into a particular pay grade and to its claim that the Board denied Kidwell's request "[t]o cheat plaintiff out of the relief and benefits he is legally entitled to." Complaint, *in* J.A. at 48. Because Kidwell's complaint thus contains "a suggestion" of monetary relief, the government argues, *see Wolfe,* 846 F.2d at 783, he should have brought his suit in the Court of Federal Claims. The alternative conclusion would, according to the government, allow plaintiffs to escape Tucker Act jurisdiction by artfully crafting their complaints to avoid explicit requests for monetary relief.

We do not share the government's concern. Just as Wolfe hinted at an interest in monetary relief without implicating Tucker Act jurisdiction, Kidwell can hint at a similar interest and stay in the district court as long as the "plain terms" of his complaint do not mention monetary relief. They do not, and in view of *Wolfe*'s observation that "it is an extremely rare plaintiff who has trouble asking for money, if that is what he wants," 846 F.2d at 784 n. 2, this omission is particularly notable. Furthermore, since Kidwell's *pro se* complaint reveals an independent interest in valuable non-monetary relief—the correction of his discharge records—it is not "in essence" a claim for monetary relief and does not raise the specter of "artful crafting" of a complaint to avoid Court of Federal Claims jurisdiction. The equitable relief that Kid-

well seeks is, in form and substance, not "negligible in comparison" to monetary claims he may raise in the future, *Hahn,* 757 F.2d at 589, so the bright line rule of *Vietnam Veterans* and *Wolfe* appropriately applies. Under that rule, Kidwell's complaint does not implicate the Tucker Act because it does not explicitly request monetary relief. The district court therefore had subject matter jurisdiction over the complaint.

## III.

We thus turn to the district court's alternative holding that, if it did have jurisdiction, it would issue summary judgment in favor of the government. We review that decision *de novo, see Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994), and the underlying decision of the Board according to the deferential standards of the Administrative Procedure Act, under which we affirm the Board's decision unless it is arbitrary, capricious, or contrary to law. *See Wolfe,* 835 F.2d at 360; 5 U.S.C. § 706(2)(A) (1988).

Kidwell's sole point on appeal concerns the Board's treatment of the Social Security Administration's determination that he had been disabled since his discharge in 1970. Specifically, he claims that the Board was bound by principles of collateral estoppel to adopt as "conclusively established" the SSA's facts regarding his disability, and that it therefore had to conclude that Kidwell was, as of the date of his discharge, severely impaired, unable to "engage in any substantial gainful activity," and "unable to do his previous work." *See* Appellant's Brief at 20, 29–31 (citing 42 U.S.C. § 423(d)(1)(A) & (2)(A) (1988 & Supp. V 1993) (defining "disability" for Social Security purposes)). Because the Board did not treat these "facts" as "conclusively established," and because they are "pertinent" and "relevant" to whether Kidwell had a physical disability at the time of his discharge, *id.* at 30, 31, he asks us to remand the case to the Board with instructions to reconsider Kidwell's request in light of the facts found by the SSA.

We do not think it necessary to determine whether the doctrine of collateral estoppel could in some cases require the Board to consider factual findings by the SSA to be

"conclusively established" because the doctrine would, in any event, not apply to this case. Collateral estoppel only applies to issues "in substance the same as those resolved" in an earlier proceeding. *Montana v. United States*, 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979); *Mayeske v. International Ass'n of Fire Fighters*, 905 F.2d 1548, 1553 (D.C.Cir.1990) ("Issue preclusion does not apply ... when the issue decided by an earlier proceeding differs substantially from the issue at hand."). In this case, the precise question put to the Board—whether Kidwell was medically fit for service at the time of his discharge—was not "actually and necessarily determined" in the SSA proceeding. *See Montana*, 440 U.S. at 153, 99 S.Ct. at 973. The SSA found that Kidwell was under a disability "since October 10, 1970, *but not before*," SSA Decision at 7, *in* J.A. at 13 (emphasis added), while Kidwell was discharged from the Army two days before October 10—on October 8, 1970. Moreover, the SSA determined that Kidwell was disabled for purposes of awarding him disability insurance. The Board, on the other hand, was concerned with whether Kidwell was medically fit for service, and under Army regulations the presence of a mental or physical impairment does not necessarily mean that a service-member is unfit. *See id.* at 6–7, *in* J.A. at 35–36.

As we read the Board's decision, then, it gave the SSA findings all the consideration they were due. The Board was clearly aware of the findings, going so far as to quote a portion of the SSA's decision. *See* Board Decision at 4, *in* J.A. at 33. The Board observed, however, that "there can be an honest difference of opinion between medical personnel concerning the date of onset and the severity of a condition at a given time." *Id.* at 10, *in* J.A. at 39. Because the Board was concerned with Kidwell's fitness for service at the time of his discharge while the SSA was concerned with Kidwell's fitness for civilian employment after his discharge, the Board reasonably considered but did not give determinative weight to the SSA's opinion. More important to the Board was its review of the medical evidence available to the Army when the discharge decision was made—evidence that did not reveal any kind of impairment. As the Board put it,

> the evidence of record, combined with the total absence of any documentation which would indicate that an unfitting psychiatric disorder existed at the time, clearly established that the applicant was physically fit, by Army standards, at the time of his 8 October 1970 discharge; and that this combination of factors outweighs any contrary implication in the 1987 SSA and the 1991 VA decisions.

*Id.* Kidwell argues that the Board improperly treated the SSA's factual findings as "implications" rather than conclusive facts. But given the question put to the Board—whether Kidwell was medically fit at the time of his discharge—we do not see how any facts found by the SSA regarding Kidwell's disabilities *after* the date of his discharge could provide anything other than "implications" regarding his fitness for military duty before that date. Given the other evidence available to the Board, it reasonably rejected those implications. Because the Board found no evidence, express or implied, demonstrating that Kidwell was unfit for service at the time of his discharge, the Board reasonably rejected Kidwell's request.

We reverse the district court's decision dismissing this case for lack of subject matter jurisdiction, but affirm its alternative grant of summary judgment in favor of the government.

*So ordered.*