# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 10, 2006                    Decided May 5, 2006

No. 04-5409

SAMUEL E. TOOTLE, II ,
APPELLANT/PETITIONER

V.

SECRETARY OF THE NAVY,
APPELLEE/RESPONDENT

On Petition for Writ of Mandamus and
Appeal from the United States District Court
for the District of Columbia
(No. 02cv02508)

*Alex Little*, Student Counsel, argued the cause as *amicus curiae* in support of appellant/petitioner.  With him on the briefs were *Steven H. Goldblatt*, appointed by the court, *David J. Arkush*, Supervising Attorney, and *Jonathan J. Li*, Student Counsel.

*Samuel E. Tootle, II*, *pro se*, filed appellant/petitioner's brief.

*Kevin K. Robitaille*, Special Assistant U.S. Attorney, argued the cause for appellee/respondent.  With him on the brief were

*Kenneth L. Wainstein*, U.S. Attorney, and *Michael J. Ryan*, Assistant U.S. Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON and GARLAND, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*:  Appellant Samuel E. Tootle, II, an enlisted member of the United States Navy, filed suit in the District Court invoking the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.* (2000).  His *pro se* petition seeks judicial review of a determination, made by a Navy physical evaluation board in 1997, that he was "fit for duty," and, thus, not eligible for medical retirement.  Upon a motion from the Secretary of the Navy (the "Government"), the District Court dismissed the case for lack of subject matter jurisdiction, ruling that the cause was properly within the exclusive jurisdiction of the Court of Federal Claims.  The District Court also purported to transfer the case to the Court of Federal Claims.

Under the Tucker Act, the Court of Federal Claims is vested with exclusive jurisdiction over cases involving non-tort money damages in excess of $10,000.  28 U.S.C. §§ 1491(a)(1), 1346(a)(2) (2000).  "Absent other grounds for district court jurisdiction, a claim is subject to the Tucker Act and its jurisdictional consequences if, in whole or in part, it explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government." *Kidwell v. Dep't of the Army*, 56 F.3d 279, 284 (D.C. Cir. 1995).  The question before this court is whether Tootle's complaint is "in essence" one for money damages and, thus, subject to the exclusive jurisdiction of the Court of Federal Claims.

In *Kidwell*, we explained that a complaint is *not* "in essence" one for money damages "as long as the sole remedy requested is declaratory or injunctive relief that is not 'negligible in comparison' with the potential monetary recovery." *Id.* (citation omitted). Tootle's complaint does not explicitly request money damages. Rather, Tootle seeks declaratory relief invalidating the board's determination and correcting his military records. And, the parties agree that, even if Tootle prevails on these claims, there is no guarantee that he ever will be entitled to any money from the federal government.

Furthermore, there is nothing in this record to suggest that Tootle has engaged in artful pleading in an effort to circumvent the jurisdiction of the Court of Federal Claims. Indeed, that court was his forum of first choice. It was only after the Government moved to have Tootle's complaint dismissed by the Court of Federal Claims – contending, in part, that Tootle's claim was "equitable" – that he sought relief in the District Court. Once the case was in District Court, the Government argued again that Tootle's complaint should be dismissed for want of subject matter jurisdiction. Before this court, the Government initially maintained that Tootle could obtain jurisdiction in neither the District Court nor the Court of Federal Claims, a position from which the Government now retreats, and that we categorically reject.

On the record at hand, it is clear that Tootle's complaint is not "in essence" one for money damages. We, therefore, hold that the District Court erred in dismissing the complaint for want of subject matter jurisdiction. We reverse the judgment of the District Court and remand the case so that the merits of Tootle's claims can be heard and resolved. We also grant Tootle's petition for a writ of mandamus to prevent any further purported transfer of this case from the District Court.

4

## I. BACKGROUND

### A. *The Facts*

Tootle enlisted in the Navy in 1979. Compl. ¶ 5, *Tootle v. Sec'y of the Navy*, CA No. 02-2508 (D.D.C. Sept. 15, 2004) ("Compl."), *reprinted in* App. to Br. of Appointed *Amicus Curiae* ("App.") 6, 7. In 1987, while serving on active duty, he was diagnosed with human immunodeficiency virus ("HIV"). *Id.* ¶ 6, *reprinted in* App. 7. Thereafter, he was required to undergo annual physical evaluations. During his 1995 evaluation, he was diagnosed with idiopathic thrombocytopenia purpura ("ITP"), a blood disorder that impedes clotting. *Id.* ¶ 8, *reprinted in* App. 8. The doctors determined that the ITP was caused by the HIV.

In January 1997, "as a result of his deteriorating medical condition," Tootle appeared for an evaluation by the local Medical Evaluation Board ("MEB") at Portsmouth Naval Hospital in Virginia. *Id.* ¶ 10, *reprinted in* App. 8. The evaluation took place between January 13 and 17. *Id.* The HIV team noted that Tootle showed a "markedly decreased platelet count of nine predispos[ing] this patient to bleeding with minimal trauma," and concluded that "[s]ince this could easily be life threatening, *it is felt that this patient is unfit for duty*." MEB Report, HIV Evaluation Unit (Jan. 23, 1997) at 3 (emphasis added), *reprinted in* App. 46, 48.

Following Navy procedure, Tootle's case was submitted to the Navy Disability Evaluation System. Compl. ¶ 29, *reprinted in* App. 12. On March 13, 1997, the MEB Report was reviewed by a Physical Evaluation Board ("PEB") comprised of one medical officer and two nonmedical officers. *Id.* ¶ 13, *reprinted in* App. 9. The PEB reached the preliminary conclusion that Tootle was fit, recommending a disposition of "Fit to Continue on Active Duty." Prelim. Findings of the PEB Proceedings (Mar. 13, 1997), *reprinted in* App. 34. The PEB gave no clear

explanation for its determination. There are, however, handwritten notations on the PEB's "Disposition Work Card" that say:

> (1) The patient is on [illegible]; (2) Does not rise to the 30%; (3) ITP has never bled.

*See* JDETS Findings & Recommended Disposition Work Card (Mar. 12, 1997), *reprinted in* App. 32.

On August 15, 1997, Tootle was notified by telephone of the PEB's preliminary finding. Compl. ¶ 20, *reprinted in* App. 11. Tootle asserts that, "[d]uring this hurried telephonic counseling," he "was not advised of his rights to appeal or to request a personal hearing." *Id.* The Navy allegedly attempted to contact Tootle after August 15, but with no success. On September 3, when Tootle had neither accepted nor challenged the PEB's finding, the Navy presumed his acceptance. *See* Presumed Acceptance of Findings (Sept. 3, 1997), *reprinted in* App. 36. On September 10, 1997, the PEB's preliminary determination became final. PEB's Notification of Decision (Sept. 10, 1997), *reprinted in* App. 41.

In November 1997, Tootle was charged with various offenses under the Uniform Code of Military Justice. He was subsequently convicted by a general court-martial on March 27, 1998, and sentenced to approximately eight years of confinement and a dishonorable discharge. Compl. ¶¶ 21-23, *reprinted in* App. 11; *see also* Report of Results of Trial (Mar. 27, 1998), *reprinted in* App. 60. Tootle has since been released from prison, and he is currently on active duty pending exhaustion of his criminal appeals.

**B.** *Procedural Background*

On January 7, 2002, Tootle filed a complaint in the Court of Federal Claims alleging that

he [was] statutorily entitled to Permanent Disability Retirement Pay, back pays and allowances, and retainer pays due to the Executive Agency arbitrarily denying the Plaintiff medical retirement and failing to comply with their own statutorily mandated rules, regulations, and policies.

Compl. ¶ 12, *Tootle v. United States*, No. 02-17C (filed Fed. Cl. Jan. 7, 2002), *reprinted in* App. 108*, 109. The complaint asserted that the question before the court was "simple" – namely, whether Tootle met the service requirements for a medical retirement in January 1997. *Id.* ¶ 44, *reprinted in* App. 119. Tootle sought correction of his military records "to reflect that he was placed on [the] Physical Disability Retirement List [in] January 1997," and reimbursement of "all pays and allowances, in the amount of $110,457.60." *Id.* ¶¶ 1, 45, *reprinted in* App. 108, 119.

On April 19, 2002, the Government filed a motion with the Court of Federal Claims seeking dismissal of Tootle's complaint for, *inter alia*, want of subject matter jurisdiction. Def.'s Mot. to Dismiss at 1, *Tootle v. United States*, No. 02-17C (filed Fed. Cl. Apr. 19, 2002), *reprinted in* App. 187. The Government argued that the Tucker Act confers jurisdiction upon the Court of Federal Claims only when a claimant has an existing substantive right to money currently due and owing, and, because Tootle could not point to a statute under which money was presently due to him, the court had no jurisdiction under the Tucker Act. *See id.* at 7, *reprinted in* App. 193. Tootle had invoked 10 U.S.C. § 1201 (2000) as the basis of his entitlement for disability retirement pay, but the Government insisted that he could not meet two of the prerequisites for benefits under § 1201: first, due to his incarceration, he could not show that he was entitled to basic pay, *id.* at 8-9, *reprinted in* App. 194-95; and, second, he could not "establish that the Secretary found him 'unfit to perform the duties of his office, grade, rank, or rating,'" *id.* at 11, *reprinted in* App. 197.

In seeking dismissal of Tootle's complaint before the Court of Federal Claims, the Government argued that the court lacked the jurisdiction to address Tootle's *essentially equitable claims*. *Id.* at 12, *reprinted in* App. 198. The Government pointedly argued that:

> Mr. Tootle's request for disability pay under 10 U.S.C. § 1201 amounts to a claim *primarily for equitable relief* because, in order to receive such pay, this Court would first be required to find him unfit for duty and retroactively retire Mr. Tootle from the Navy. . . . *Mr. Tootle's claim amounts to a request primarily for equitable relief over which this Court lacks jurisdiction*.

*Id.* at 14-15, *reprinted in* App. 200-01 (emphasis added). On May 10, 2002, Tootle moved for a voluntary dismissal, and on May 13, 2002, the Court of Federal Claims dismissed his complaint without prejudice.

Tootle then filed the present action in the District Court for the District of Columbia. His complaint, resting on a cause of action under the APA, alleges that the PEB's finding that he was fit for duty was arbitrary and capricious and inadequately explained, and that the PEB disregarded the Navy's regulations by, among other things, failing to provide adequate notice of the decision and counseling regarding its consequences. *See* Compl. ¶¶ 13, 20, 29, 32-33, *reprinted in* App. 9, 11-14a. The complaint seeks no monetary relief. Rather, it asks the court for a "declaration that the results of the 13 March 1997, Physical Evaluation Board are invalid," and for an order reinstating the findings of the 1997 MEB and correcting Tootle's "service record . . . to show that he was transferred to the Permanent Disability Retirement List on 27 January 1997." *Id.* at 9, *reprinted in* App. 14(a).

A year after Tootle filed suit in District Court, the Government again moved to dismiss, arguing, *inter alia*, that the

District Court lacked subject matter jurisdiction. Def.'s Mot. to Dismiss, *Tootle v. Sec'y of the Navy*, CA No. 02-2508 (D.D.C. Sept. 15, 2004), *reprinted in* App. 82. The Government argued that, although the complaint did not include an express demand for monetary relief, the essence of Tootle's claim was a demand for disability retirement pay under 10 U.S.C. § 1201. Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss at 10, *Tootle v. Sec'y of the Navy*, CA No. 02-2508 (D.D.C. Sept. 15, 2004)*, reprinted in* App. 84, 93. The Government thus contended that the District Court "lack[ed] subject matter jurisdiction over Plaintiff's claim, which 'in essence' is for non-tort money damages in excess of $10,000, and consequently falls within the exclusive jurisdiction of the Court of Federal Claims." *Id.* at 12, *reprinted in* App. 95.

On September 15, 2004, the District Court granted the Government's motion to dismiss. *Tootle v. Sec'y of the Navy*, CA No. 02-2508, Mem. Op. (D.D.C. Sept. 15, 2004), *reprinted in* App. 170. The trial court found that, while Tootle "ostensibly seeks injunctive relief pursuant to the [APA] as well as a mandamus remedy," and although "[h]e makes no specific demand for monetary damages[,] . . . [i]n substance . . . plaintiff demands monetary relief from the federal government in the form of disability retirement benefits pursuant to 10 U.S.C. § 1201." *Id.* at 5 (citations omitted), *reprinted in* App. 174. The District Court surmised that Tootle's "challenge is not to the PEB's 'fit for duty' determination as much as it is to an immediate consequence of that determination: the denial of disability retirement benefits." *Id.* at 6, *reprinted in* App. 175. The District Court further assumed that "there is no significant value in the relief plaintiff requests apart from the benefits he would receive if a ruling in his favor results in disability retirement," and thus concluded that the "complaint raises a claim for monetary damages over which the Court of Federal Claims has exclusive jurisdiction." *Id.* In addition to granting the Government's motion to dismiss, the District Court, *sua*

*sponte*, purported to transfer Tootle's action to the Court of Federal Claims pursuant to 28 U.S.C. § 1631 (2000). *Tootle v. Sec'y of the Navy*, CA No. 02-2508, Transfer Order (D.D.C. Sept. 15, 2004), *reprinted in* App. 177. The District Court's order made it clear, however, that its judgment was final and appealable. *Id.*

Tootle filed a timely Notice of Appeal, which was initially docketed as a petition for a writ of mandamus. The docketing was subsequently changed so that the appeal has been correctly denominated "On Petition for Writ of Mandamus and Appeal from the United States District Court for the District of Columbia." *In re Tootle*, No. 04-5409, Order (D.C. Cir. Apr. 12, 2006). On September 1, 2005, the court appointed Professor Steven H. Goldblatt as *amicus curiae* to present written and oral arguments on behalf of Tootle.

## II. ANALYSIS

### A. *Appellate Jurisdiction*

In granting the Government's motion to dismiss, the District Court issued a final appealable order, which this court has jurisdiction to review pursuant to 28 U.S.C. § 1291 (2000). *See Brown v. Turner*, 659 F.2d 1199, 1200 (D.C. Cir. 1981) (jurisdiction to review is under 28 U.S.C. § 1291 where a district court grants a motion to dismiss for lack of subject matter jurisdiction); *Rogers v. United States*, 902 F.2d 1268, 1269 (7th Cir. 1990) (holding dismissal for lack of subject matter jurisdiction is a final judgment).

The District Court's purported transfer of the case to the Court of Federal Claims after dismissing Tootle's complaint for want of subject matter jurisdiction does not affect the jurisdiction of this court to entertain Tootle's appeal. A district court must dismiss an action where, as here, it concludes that it lacks subject matter jurisdiction. FED. R. CIV. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise

that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). A federal court "shall, if it is in the interest of justice, transfer" a case over which it lacks jurisdiction to a court of competent jurisdiction. *See* 28 U.S.C. § 1631. However, § 1631 "confers on [a federal court] authority to make a single decision upon concluding that it lacks jurisdiction – whether to dismiss the case or, 'in the interest of justice,' to transfer it to a court . . . that has jurisdiction." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) (quoting 28 U.S.C. § 1631). There is no dispute here that the District Court clearly intended to grant the Government's motion to dismiss for want of subject matter jurisdiction. Having taken this action, the trial court was without authority to transfer the case.

The Government does not contest that, under § 1631, a district court must dismiss *or* transfer upon concluding that it lacks jurisdiction. And the Government does not question that this court has jurisdiction pursuant to 28 U.S.C. § 1291 to review the District Court's final and appealable decision to dismiss Tootle's complaint for want of subject matter jurisdiction. *Amicus*, on behalf of Tootle, argues explicitly that this court has jurisdiction to review the District Court's order as an ordinary appeal under 28 U.S.C. § 1291, even though the court initially ordered Tootle's appeal to be filed as a petition for a writ of mandamus. Br. of *Amicus Curiae* at 17. We agree.

This court probably would have been without jurisdiction to entertain Tootle's appeal if the District Court had effected a transfer. *See In re Briscoe*, 976 F.2d 1425, 1426 (D.C. Cir. 1992) (per curiam) ("The basic rule in civil practice is that if a case is physically transferred before an appeal or a petition for mandamus has been filed, the court of appeals in the transferor circuit has no jurisdiction to review the transfer.") (citing *Starnes v. McGuire*, 512 F.2d 918, 924 (D.C. Cir. 1974) (en banc))*; see also Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543,

546 (D.C. Cir. 1992) (holding that as a general rule no appeal lies from a transfer order issued pursuant to § 1631 because it is interlocutory). That, however, is not the situation here. In this case, the only order the District Court actually effected was the dismissal. That disposition is final, appealable, and subject to *de novo* review. *E.g.*, *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1156 (D.C. Cir. 2005) ("A dismissal for lack of subject matter jurisdiction is . . . reviewed *de novo*.").

## B. *The District Court's Jurisdiction*

Our disposition of this appeal is largely controlled by *Kidwell v. Department of the Army*, 56 F.3d 279 (D.C. Cir. 1995). Kidwell brought an action under the APA challenging a refusal of the Army Board for Correction of Military Records "to change his military files to indicate a 'medical' discharge." *Id.* at 281. As here, "Kidwell's complaint did not seek any monetary relief." *Id.* at 283. The Government, nonetheless, "claimed that a district court order requiring the Board to change Kidwell's records . . . would entitle Kidwell to retroactive disability benefits that could exceed $50,000," and argued that the District Court, thus, lacked subject matter jurisdiction "[b]ecause the practical effect of Kidwell's request would be an award of money damages." *Id.* The district court agreed with the Government and dismissed Kidwell's lawsuit. *Id.* at 281, 283.

This court reversed the District Court's determination that it lacked jurisdiction, holding that Kidwell's claim was neither explicitly nor "in essence" one for money damages. *Id.* at 281. The court gave four justifications for its holding that the District Court had jurisdiction over Kidwell's complaint. First, "the plaintiff . . . [had] not explicitly requested monetary relief." *Id.* at 285. Second, "granting the relief requested would offer a direct non-monetary benefit to the plaintiff because resting Kidwell's discharge on medical grounds would lift some of the shame associated with failing to receive an honorable

discharge." *Id.* Third, "any monetary benefits that [might] flow from Kidwell's victory would not come from the district court's exercise of jurisdiction, but from the structure of statutory and regulatory requirements governing compensation when a servicemember's files change." *Id.* at 285-86. And, finally, the court noted that it

> could refuse jurisdiction only by going outside the record to review the process by which Kidwell might receive past disability payments, a process that is apparently far from automatic, since Kidwell would have to file a separate claim with the Secretary for the benefits and since the amount due him would be reduced by the yet-to-be-determined amount of any VA benefits that he receives.

*Id*. at 285-86 (citation omitted). The court declined to look "outside the record" and speculate about monetary relief that might later flow to Kidwell if he prevailed on his non-monetary claims. *See id.*

Tootle's claim is materially indistinguishable from Kidwell's and is, therefore, not "in essence" a claim for monetary relief. First, as the District Court acknowledged, and the Government concedes, Tootle's complaint does not explicitly request money damages. The requested relief is limited to a "declaration that the results of the 13 March 1997, Physical Evaluation Board are invalid," and an order reinstating "the results of the 13-17 January 1997, MEB board" and correcting Tootle's "service record . . . to show that he was transferred to the Permanent Disability Retirement List on 27 January 1997." Compl. at 9, *reprinted in* App. 14(a). Nowhere in the complaint does Tootle request money.

It does not matter, as the Government contends, that Tootle's subsequent filings, in particular the legal memoranda he submitted to the District Court, indicate that he seeks money.

A court may look beyond the pleadings to resolve disputed jurisdictional facts when considering a motion to dismiss under FED. R. CIV. P. 12(b)(1), *e.g.*, *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000); this line of precedent, however, does not overcome the rule that where the jurisdiction of the court turns on whether the complaint seeks monetary relief, the court must generally limit itself to the four corners of the complaint. *Wolfe v. Marsh*, 846 F.2d 782 (D.C. Cir. 1988) (per curiam); *accord Kidwell*, 56 F.3d at 285 (reaffirming that the court has adopted "a 'strict pleading requirement'" in Tucker Act cases). In *Wolfe*, the plaintiff's complaint sought only equitable relief. *Wolfe*, 846 F.2d at 783. "Subsequent memoranda contain[ed] hints that Wolfe may have intended to assert a claim for money damages, however." *Id.* We held that, in determining whether a complaint seeks monetary relief, a "bright line rule is especially appropriate." *Id.* at 785. As such, the court should consider only the complaint itself in determining whether money damages have been requested. We explained:

> Given the need for certainty as to jurisdiction, we cannot allow plaintiff's subjective intent, ambiguously expressed, to control the issue. There is no reason why trial courts (or appellate courts) should have to resort to close scrutiny of ambiguous memoranda to glean an intent to set forth a monetary claim. *In a matter as basic as whether the plaintiff is asking the trial court to award monetary relief, the trial court must be able to answer that question from the plain terms of the complaint.*

*Id.* (emphasis added).

Second, and most importantly, the equitable relief sought by Tootle has significant value. Tootle, a service member who according to undisputed records suffers from deteriorating health, seeks a determination that he is "unfit for duty" and

eligible for retirement. Should he succeed, he undeniably will obtain a win of significant non-monetary value.

The Government asserts that, unlike the "less than honorable" discharge that was challenged by the plaintiff in *Kidwell*, there is no stigma attached to the PEB's declaration that Tootle is "fit for duty." The Government points out that Kidwell requested a change to his records from an administrative discharge based on misconduct to a medical retirement based on a specific disability rating, whereas Tootle seeks a *downgrade* in the determination that he is "fit for duty." The Government thus contends that Tootle seeks only a status to which greater stigma is attached. This is a specious argument. The test here is not whether Tootle will be more or less stigmatized in metaphysical terms by being classified "unfit for duty" as opposed to "fit for duty," but whether there is value to the equitable relief that he seeks. Given Tootle's serious health issues, there can be no doubt that retroactive disability retirement, *i.e.*, placement on the Permanent Disability Retirement List, would give him significant value apart from any potential for future monetary benefits. In other words, retirement itself has non-negligible value, especially for an ill serviceman.

Third, as in *Kidwell*, any monetary benefits that might flow if Tootle prevails on his non-monetary claims will not come from the District Court's exercise of jurisdiction, "but from the structure of statutory and regulatory requirements governing compensation when a servicemember's files change." *Kidwell*, 56 F.3d at 285-86. Indeed, we have no way of knowing whether Tootle ever will be entitled to any monies if he succeeds before the District Court. As counsel for the Government conceded at oral argument, reinstating the MEB's finding that Tootle was "unfit for duty" would have no immediate monetary consequences. Oral Arg. Tape at 21:30-22:12. And, given the yet to be finalized court-martial, the monetary implications of

any change in Tootle's retirement status are, at best, unclear. *See id.* at 22:15-26:40.

Finally, as in *Kidwell*, any monetary recovery Tootle might be entitled to in the future would be entirely separate from the District Court's decision regarding whether the Government acted arbitrarily and capriciously or neglected to follow Navy regulations and procedures when it adopted the PEB's finding. We will not go outside the record to speculate over what Tootle *might* secure in the way of monetary benefits should he prevail in District Court. Nor need the District Court engage in any such speculation. The issue before the District Court will be the propriety of the Navy's administrative process, and there is no scenario under which it could award Tootle money damages. At most, a District Court decision in Tootle's favor would enable him to avail himself of statutory and regulatory provisions and procedures that may, or may not, entitle him to a monetary recovery. *See Kidwell*, 56 F.3d at 285-86; *Vietnam Veterans v. Sec'y of the Navy*, 843 F.2d 528, 534 (D.C. Cir 1988) ("[A] claim is not for money merely because its success may lead to pecuniary costs for the government or benefits for the plaintiff.").

In granting the Government's motion to dismiss, the District Court used the wrong test to determine whether Tootle's complaint is "in essence" a claim for monetary relief. Relying on *Bliss v. England*, 208 F. Supp. 2d 2 (D.D.C. 2002), the trial court held that Tootle's complaint was "in essence" a request for monetary relief because "the plain effect of a judgment in plaintiff's favor would be a significant financial gain for plaintiff." *Tootle v. Sec'y of the Navy*, CA No. 02-2508, Mem. Op. at 5 (D.D.C. Sept. 15, 2004), *reprinted in* App. 170, 174. This is not the law of the circuit. As noted above, whether Tootle's claim is "in essence" one for money damages is controlled by *Kidwell*. And *Kidwell* makes it perfectly clear that "[a] plaintiff does not 'in essence' seek monetary relief . . .

merely because he or she hints at some interest in a monetary reward from the federal government *or because success on the merits may obligate the United States to pay the complainant.*" 56 F.3d at 284 (emphasis added). "[E]ven if [a] plaintiff file[s] [a] complaint with an eye to future monetary awards, a district court with otherwise appropriate jurisdiction may hear the claim and grant the proper equitable relief." *Id.*

> [A]s long as the plaintiff's complaint only requests non-monetary relief that has "considerable value" independent of any future potential for monetary relief – that is, as long as the sole remedy requested is declaratory or injunctive relief that is not "negligible in comparison" with the potential monetary recovery – we respect the plaintiff's choice of remedies and treat the complaint as something more than an artfully drafted effort to circumvent the jurisdiction of the Court of Federal Claims.

*Id.* (citations omitted).

We hold that the District Court had jurisdiction in this case, because "the sole remedy requested is declaratory or injunctive relief that is not 'negligible in comparison' with the potential monetary recovery." *Id.* Tootle's challenge to the Navy's administrative process is nothing more than a routine APA case – a challenge to the reasonableness of governmental action on the grounds that it was arbitrary, capricious, inadequately explained, and in violation of agency regulations. The District Court had jurisdiction over this claim under 28 U.S.C. § 1331 (2000), and the complaint states a cause of action under 5 U.S.C. §§ 704 and 706.

The Government's position in this case is, to say the least, troublesome. In its brief submitted to this court and during oral argument, the Government pressed the claim that *neither* the Court of Federal Claims *nor* the District Court has jurisdiction to address Tootle's complaint. Counsel conceded during

argument that he could point to no authority to support this proposition. Oral Arg. Tape at 15:29-16:05, 31:00-32:22.

The Government has since modified its position. In a post-argument submission, the Government states that, given the Federal Circuit's recent decision in *Fisher v. United States*, 402 F.3d 1167, 1174-75 (Fed. Cir. 2005) (en banc in relevant part), holding that 10 U.S.C. § 1201 is a money-mandating statute, "the government now *likely* would seek dismissal for failure to state a claim on which relief could be granted, rather than a dismissal for lack of jurisdiction if the case returned to the Court of Federal Claims." Resp. of the Sec'y of the Navy to Question Raised by the Panel at Oral Arg. at 3 n.1 (emphasis added). Notably, this post-argument submission does not disavow the Government's earlier stance that a district court can be stripped of jurisdiction by the Tucker Act even when there is no jurisdiction in the Court of Federal Claims. Rather, the Government now contends only that the position they espouse may be foreclosed in *this case*.

We categorically reject the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims. Put plainly, the Court of Federal Claims can have exclusive jurisdiction *only* with respect to matters that Congress has proclaimed are within its jurisdictional compass. The Government argues that Tootle's complaint is outside of the jurisdiction of the District Court because it is within the exclusive jurisdiction of the Court of Federal Claims. This makes no sense, however, if, as is the case here, Tootle's complaint is not subject to the jurisdiction of the Court of Federal Claims. There cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act. *See Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996) ("[T]o determine whether Plaintiff's suit is cognizable under the APA, the court must first examine whether he has an available remedy under the Tucker Act."). If the Court of

Federal Claims lacks jurisdiction, the only question is whether there is an affirmative congressional grant of jurisdiction to the federal district courts.

We need not tarry further over this issue, because it is clear in this case that the District Court was not divested of its jurisdiction by the Tucker Act. As noted above, our decision in *Kidwell* controls the disposition of this case. The District Court has subject matter jurisdiction under 28 U.S.C. § 1331 to entertain Tootle's APA claims.

### III. CONCLUSION

The judgment of the District Court dismissing the complaint for lack of subject matter jurisdiction is hereby reversed, and the case is remanded so that the merits of Tootle's claims can be heard and resolved. We also grant Tootle's petition for a writ of mandamus "in aid of [our] . . . jurisdiction[ ]," pursuant to 28 U.S.C. § 1651(a) (2000), to prevent any further purported transfer of this case from the District Court. *In re Sealed Case*, 141 F.3d 337, 340 (D.C. Cir. 1998) ("This circuit has frequently exercised its mandamus jurisdiction to vacate transfer orders, especially where the transfer was beyond the district court's power . . . ."); *see In re Chatman-Bey*, 718 F.2d 484, 486 (D.C. Cir. 1983) (per curiam).

*So ordered*.