# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 20, 2010          Decided June 22, 2010

No. 09-5187

MALCOLM G. SCHAEFER,
APPELLANT

v.

JOHN MCHUGH,
SECRETARY OF THE ARMY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-01550-RJL)

*Ryan C. Morris* argued the cause for appellant. With him on the briefs was *Paul J. Zidlicky*.

*Kathryn A. Donnelly*, Special Assistant United States Attorney, argued the cause for appellee. With her on the brief were *Channing D. Phillips*, Acting United States Attorney, *R. Craig Lawrence*, Assistant United States Attorney, and *Major Joshua M. Toman*, U.S. Army Litigation Division.

Before: GINSBURG, TATEL, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: Malcolm Schaefer pointed to his bad knees as a reason to get out of his Army service. But Schaefer was an Army lawyer. Bad knees typically do not preclude service as a lawyer. The Army therefore rejected Schaefer's request for discharge. But because of an administrative foul-up, Schaefer was able to obtain papers showing his legal discharge. Shortly afterwards, the Army informed Schaefer that he had to return to service. Schaefer did so, and the Army then took disciplinary action against him for his apparent shenanigans. In this litigation, Schaefer argues, in essence, that he beat the system by obtaining papers showing his discharge and that subsequent Army disciplinary actions against him were invalid. The District Court rejected Schaefer's challenge, granting summary judgment to the Secretary of the Army. We affirm the judgment of the District Court.

I

The U.S. Army paid for Malcolm Schaefer's law school education in return for a six-year commitment to the Army. As of 2000, Schaefer was in the fourth year of his six-year active-duty service obligation. He was serving as an officer in the United States Army Judge Advocate General's Corps at Fort Benning, Georgia.

Beginning in late 2000, Schaefer sought a medical discharge from the Army because of injuries to his knees. He did so without informing anyone in his JAG Corps chain of command. Based on discharge orders issued in early July

2001, Schaefer was to be separated from the Army on September 14, 2001.

In late July 2001, the JAG Corps found out about Schaefer's pending separation – not because Schaefer informed his superiors, but because a JAG Corps employee happened to come across his discharge orders when updating records. Surprised to find that Schaefer was scheduled for medical separation – after all, Schaefer was a lawyer, and not in combat or in a non-combat position requiring significant physical activity – the JAG Corps took immediate action. The chief of the JAG Personnel Office informed the U.S. Army Physical Disability Agency (the entity within the Army that coordinates medical discharges) that Schaefer's medical problems would not impair his ability to serve as a military lawyer. On August 14, 2001, the Army therefore revoked the authorization for Schaefer's discharge orders. The Army then issued a new medical determination deeming Schaefer fit for duty. The Army informed Schaefer of that determination on September 5, 2001. Schaefer's superiors also told him that his September discharge had been placed on hold.

Schaefer nonetheless showed up to obtain a discharge on Friday, September 14, 2001. Because of a paperwork foul-up, Schaefer was mistakenly issued a discharge certificate that day. Schaefer's chain of command learned of this the following Monday – September 17, 2001 – when they came to work to find Schaefer's office empty.

The Army soon sent Schaefer a letter informing him that if he did not report back to Fort Benning, the Army would take steps to return him to military control. After failing to obtain a court injunction preventing the Army from taking action against him, Schaefer resumed work as a member of

the JAG Corps.  *See Schaefer v. White*, 174 F. Supp. 2d 1374, 1384 (M.D. Ga. 2001).

In the months following his return, the Army issued Schaefer both a highly critical Officer Evaluation and a Memorandum of Reprimand for wrongfully obtaining his discharge certificate.  The Army also brought charges against Schaefer for obtaining a fraudulent discharge in violation of the Uniform Code of Military Justice.  Rather than undergo trial by court-martial, Schaefer submitted a voluntary Resignation for the Good of the Service. As a result of his resignation, Schaefer left the Army on October 1, 2002.

Almost two years after his resignation, Schaefer filed a request with the Army Board for Correction of Military Records – the body authorized by the Secretary of the Army to correct Army personnel files – to have certain entries in his official military personnel file removed.  *See* 10 U.S.C. § 1552(a)(1).  As relevant here, Schaefer asked the Correction Board to (1) validate his September 2001 discharge, (2) nullify his October 2002 discharge, (3) expunge the adverse Officer Evaluation, Memorandum of Reprimand, and resignation from his record, and (4) stop the Army from recouping the severance pay he received in association with his 2001 medical discharge.

The Correction Board denied Schaefer's request.  The Board concluded that Schaefer's September 14, 2001, discharge orders lacked legal effect because the authority to issue those orders had been revoked.  The Board also concluded that Schaefer failed to show that his negative Officer Evaluation, Memorandum of Reprimand, or resignation should be removed from his military service record "to correct an error or remove an injustice."  *Id.*

Schaefer then filed suit in U.S. District Court, arguing primarily that the Correction Board's decision was arbitrary, capricious, and contrary to law. The District Court granted summary judgment to the Secretary of the Army.

This Court reviews the District Court's grant of summary judgment *de novo*. The courts review the Correction Board's decision under the Administrative Procedure Act's arbitrary and capricious standard. *Kidwell v. Department of the Army*, 56 F.3d 279, 286 (D.C. Cir. 1995). As a general matter, judicial review under that standard is deferential. When assessing a Correction Board decision, courts employ an "unusually deferential application of the arbitrary or capricious standard." *Musengo v. White*, 286 F.3d 535, 538 (D.C. Cir. 2002) (internal quotation marks omitted); *see Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000).

II

Schaefer asserts that he was validly discharged from the U.S. Army on September 14, 2001, and that the Correction Board should erase all traces of adverse action the Army took against him after that date. Relatedly, Schaefer argues that even if the Army did in fact revoke his September 14, 2001, discharge, the Army did not follow its own procedures in doing so. We will consider each argument in turn.

A

The Army Board for Correction of Military Records rejected Schaefer's claim that he was validly discharged from the Army on September 14, 2001. The Board's decision was reasonable and reasonably explained.

After thoroughly considering the facts of Schaefer's case, the Correction Board concluded that his September 14, 2001, discharge was "without legal effect because the authority to issue it had been revoked well before that date." J.A. 126. That finding comports with military court precedent establishing that "the mistaken delivery of a discharge certificate" which has "no legal effect" and which has "previously been revoked" does not "terminate" military service. *United States v. Garvin*, 26 M.J. 194, 194-96 (C.M.A. 1988). The issuing authority "must have intended the discharge to take effect" for that discharge to terminate service. *United States v. Harmon*, 63 M.J. 98, 101 (C.A.A.F. 2006).

Schaefer offers no persuasive grounds on which to second-guess the Correction Board's conclusion. The Board reasonably concluded that Schaefer was not lawfully discharged from the Army on September 14, 2001.

B

The Correction Board also rejected Schaefer's claim that Army procedures were not followed in revoking the authorization for his discharge.

Schaefer contends that the wrong Army entity revoked the authorization for his discharge – that one entity (the U.S. Army Physical Disability Agency) issued the order when another entity (the U.S. Total Army Personnel Command) had the sole authority to do so. The Correction Board reviewed the application of the relevant regulations in detail and concluded that the Army did not commit procedural error when it revoked the authorization for Schaefer's discharge. Moreover, the Board recognized that any de minimis violation

of regulations when the Army revoked Schaefer's discharge did not harm Schaefer.

We agree with the Board's latter rationale and need not consider the former. A party claiming harm from an agency's failure to follow its own rules must demonstrate some form of prejudice. *See Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005); *Steenholdt v. FAA*, 314 F.3d 633, 639-40 (D.C. Cir. 2003). Schaefer was well aware that the Army had revoked the authorization for his discharge. He was also directly informed by his chain of command that his discharge was on hold. Schaefer failed to show that he suffered any prejudice from the Army's alleged error regarding which entity could technically revoke the authorization for his discharge.

C

In his brief, Schaefer also suggests that Article 3(b) of the Uniform Code of Military Justice is unconstitutional as applied to him. That provision states: "Each person discharged from the armed forces who is later charged with having fraudulently obtained his discharge is . . . subject to trial by court-martial on that charge and is after apprehension subject to this chapter while in the custody of the armed forces for that trial." 10 U.S.C. § 803(b). That provision is not relevant here. Article 3(b) applies only to individuals who are actually "discharged from the armed forces" and then returned to the military to face court-martial. *Id.* As we have explained, Schaefer remained in the military until his voluntary resignation in 2002. Thus we need not consider the constitutionality of Article 3(b).

8

\* \* \*

We affirm the judgment of the District Court.

*So ordered.*