# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 15, 2022        Decided July 1, 2022

No. 21-5242

CROWLEY GOVERNMENT SERVICES, INC.,
APPELLANT

v.

GENERAL SERVICES ADMINISTRATION AND ROBIN CARNAHAN,
IN HER OFFICIAL CAPACITY AS ADMINISTRATOR OF THE
GENERAL SERVICES ADMINISTRATION,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-02298)

---

*James Y. Boland* argued the cause for appellant. With him on the briefs were *Nicholas M. DePalma* and *Kevin W. Weigand*.

*Steven Hazel*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Brian M. Boynton*, Acting Assistant Attorney General, *Mark B. Stern*, Attorney, and *Nitin Shah*, General Counsel, General Services Administration. *Stephanie R. Johnson* and *R. Craig Lawrence*, Assistant U.S. Attorneys, entered appearances.

Before: SRINIVASAN, *Chief Judge*, HENDERSON and JACKSON*, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Crowley Government Services, Inc. sued the General Services Administration and its Administrator (collectively, GSA), seeking declaratory and injunctive relief to halt the GSA's purported practice of interfering with payments owed to Crowley under its contract with the United States Transportation Command (TRANSCOM). Crowley argues that the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706, and the general federal question statute, 28 U.S.C. § 1331, confer subject matter jurisdiction on the district court to review the GSA's alleged violation of the Contract Disputes Act of 1978, 41 U.S.C. § 7103(g), and the Transportation Act of 1940, 31 U.S.C. § 3726(b).[1] The question is whether Crowley's suit against the GSA, which is not a party to Crowley's contract with TRANSCOM, is "at its essence" contractual, *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)—including whether Crowley "in essence" seeks more than $10,000 in monetary relief from the federal government, *Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Recs.*, 56 F.3d 279, 284 (D.C. Cir. 1995)—such that it is subject to the exclusive jurisdiction of the United States Court of Federal Claims (Claims Court) pursuant to the Tucker Act, 28 U.S.C. § 1491(a). The district court answered affirmatively and dismissed Crowley's complaint for lack of subject matter

---

* Circuit Judge, now Justice, Jackson was a member of the panel at the time the case was argued but did not participate in this opinion.

[1] Crowley also invoked the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, for its requested declaratory relief.

jurisdiction. *Crowley Gov't Servs. v. GSA*, No. 21-cv-2298, 2021 WL 4940953, at \*9–11, \*12 (D.D.C. Oct. 22, 2021).

We disagree. Crowley's action against the GSA in district court is not "at its essence" contractual because Crowley does not seek to enforce or recover on the contract with TRANSCOM. Nor does Crowley "in essence" seek monetary relief from the federal government in district court. Rather, it requests declaratory and injunctive relief that, if granted, would have considerable value independent of (and not negligible in comparison to) any monetary recovery Crowley may ultimately attain in other proceedings. Accordingly, we reverse and remand to the district court.

## I.  BACKGROUND

In November 2016, Crowley,[2] which "provides marine solutions, energy, and logistical services in domestic and international markets," entered a procurement contract with TRANSCOM, a unit of the Department of Defense (DOD).[3] Compl. ¶¶ 12, 19, No. 21-cv-2298, *Crowley Gov't Servs. v. GSA* (D.D.C. Aug. 30, 2021), *reprinted in* Joint Appendix (J.A.) 6, 8–9. Crowley agreed to "provide[] various logistical, planning, and transportation coordination services to assist [TRANSCOM] with managing a large and complex network of moving goods and cargo for the [DOD]." *Id.* ¶ 20, *reprinted in* J.A. 9. Under the contract, government shippers send Crowley orders for cargo shipments to and from DOD facilities within

---

[2] TRANSCOM awarded the contract to Crowley's predecessor-in-interest, Crowley Logistics, Inc. We refer to the company as "Crowley."

[3] Reviewing the dismissal of a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "we accept the facts alleged by the plaintiff as true." *Schnitzer v. Harvey*, 389 F.3d 200, 202 (D.C. Cir. 2004).

the continental United States. Crowley, which does not handle or take possession of the cargo, coordinates the shipment process by subcontracting to third parties the transportation of the cargo from its origin and to its destination. Crowley's contract with TRANSCOM sets forth performance standards for the transportation process, including delivery timeframes, permissible reasons for deviating from the timeframes and methods for calculating the timeframes. At the time Crowley filed its complaint, Crowley had coordinated approximately 1.2 million shipments for TRANSCOM under the contract.

This dispute arises from the GSA's audits of Crowley's invoices to TRANSCOM for payment for services provided under the contract. The GSA, which all parties agree is not party to the contract, asserted authority to audit Crowley's invoices pursuant to the Transportation Act. *See* 31 U.S.C. 3726(b) (authorizing GSA to "conduct pre- or post-payment audits of transportation bills of any Federal Agency"). Through the audits, the GSA concluded that Crowley had, *inter alia*, misapplied agreed-upon exceptions for delays in cargo delivery, used the wrong method for calculating transit times and submitted invoices based on improperly completed government documentation. As a result, the GSA has issued more than 50,000 Notices of Overcharge (NOCs) totaling approximately $37 million to Crowley since 2018.[4]

---

[4] As the district court explained, TRANSCOM uses "a third-party payment system, operated by a bank, through which GSA 'unilaterally applie[s] off-sets to future payments to Crowley' pursuant to the NOCs, without coordinating such offsets with [TRANSCOM]" or other DOD agencies. *Crowley Gov't Servs. v. GSA*, No. 21-cv-2298, 2021 WL 4940953, at *3 (D.D.C. Oct. 22, 2021) (quoting Contracting Officer's Final Decision Regarding Certified Claim, Defense Freight Transportation Services (DFTS), Contract HTC711-17-D-R003 ¶ 3(f)(1) (Dec. 30, 2020), *reprinted in*

In January 2020, Crowley objected to the GSA's asserted authority to conduct the audits and submitted a claim to TRANSCOM's Contracting Officer challenging various categories of the NOCs under a provision of the contract it argued was governed by the Contract Disputes Act. *See* 41 U.S.C. § 7103(a), (g) (instructing contractors to submit claims against federal government to contracting officer, whose decision "is final and conclusive and is not subject to review by any forum, tribunal or Federal Government agency, unless an appeal or action is timely commenced as authorized by this chapter"). After reviewing Crowley's challenges, the Contracting Officer issued three final decisions covering various aspects of the claims, two in August 2020 and another a few months later in December 2020. Most relevant here, the Contracting Officer concluded in the December 2020 final decision that "the NOCs are erroneous," "are not factually supportable, and, hence, are not valid" and "should not have been issued." Contracting Officer's Final Decision Regarding Certified Claim, Defense Freight Transportation Services (DFTS), Contract HTC711-17-D-R003 ¶¶ 3(a)–(e) (Dec. 30, 2020), *reprinted in* J.A. 37. Although he agreed with Crowley that the funds withheld by the GSA, which "remain[ed] in GSA's possession," properly belonged to Crowley, the Contracting Officer determined that TRANSCOM "has no authority to order GSA to pay from its own funding source for disputed NOCs" and "does not have any authority to order payment from the U.S. Treasury's miscellaneous receipts account." *Id.* ¶ 3(f)(2), *reprinted in* J.A. 38. He then advised that Crowley could pursue the funds only "through the GSA Post-Payment Audit dispute process, appealable to the Civilian

J.A. 38). TRANSCOM, through the DOD, pays the full amount of the invoice to the bank and the GSA deducts the NOC amount from payments owed to Crowley, directing the withheld funds to a "miscellaneous receipts account" of the United States Treasury. *Id.*

Board of Contract Appeals of the U.S. Court of Federal Claims." *Id.* (citing 41 C.F.R. §§ 102-118.600 *et seq.*). Notwithstanding the Contracting Officer's final decisions, the GSA had, until recently, continued to issue NOCs to Crowley. Joint Status Report ¶ 2, *Crowley Gov't Servs. v. United States*, No. 21-cv-1405 (PEC) (Fed. Cl. May 26, 2022), ECF No. 45 ("The parties have negotiated a separate agreement in which the United States will temporarily suspend the issuance of Notices of Overcharge ('NOCs') and any deductions for outstanding NOCs until November 19, 2022.").

In May 2021, Crowley filed suit against TRANSCOM in Claims Court, alleging breach of contract for nonpayment of services and seeking money damages and declaratory relief, as TRANSCOM had not reimbursed Crowley for the payments offset by the GSA. Compl. ¶¶ 1, 49–60, *Crowley*, No. 21-cv-1405 (PEC) (Fed. Cl. May 27, 2021), ECF No. 1. After the United States moved to dismiss, Crowley amended its complaint, adding an alternative count against the GSA under 49 U.S.C. § 14705, seeking recovery of the charges already deducted by the GSA through the 31 U.S.C. § 3726(b) audits. Am. Compl. ¶¶ 17, 98–102, *Crowley*, No. 21-cv-1405 (PEC) (Fed. Cl. Aug. 26, 2021), ECF No. 8. Crowley submits to us that it included the alternative count "only as a last resort to preserve [its] monetary claim due to the three-year statute of limitations" but also maintains that "[s]ection 14705 does not apply and cannot provide a jurisdictional basis for Crowley to challenge GSA's violation of the Contract Disputes Act's finality clause." Appellant's Br. 21 n.3. Crowley's action, which remains pending in Claims Court, is currently at the discovery stage. *See* Joint Status Report, *supra*, ¶ 5.

Several days after filing its amended complaint in Claims Court in late August 2021, Crowley filed a two-count complaint against the GSA in district court. Count I alleged that

the GSA exceeded its statutory authority by improperly auditing Crowley's invoices and issuing NOCs in violation of (1) the Transportation Act, 31 U.S.C. § 3726(b), because Crowley is not a "carrier or freight forwarder" and its invoices are not "transportation bills" under the statute, *id.* § 3726(a), and (2) the Contract Disputes Act, 41 U.S.C. § 7103(g), because the NOCs contravene the TRANSCOM Contracting Officer's final decisions and the statute's so-called finality clause. Compl. ¶¶ 108–26, *reprinted in* J.A. 20–22; *see also* Appellant's Br. 6–10 (arguing dispute resolution schemes under Transportation Act and Contract Disputes Act are mutually exclusive and cannot both apply to same contract). Count II alleged, in the alternative, that the GSA's actions are *ultra vires*, thus warranting judicial review and injunctive relief because no other remedy is available. Compl. ¶¶ 127–37, *reprinted in* J.A. 22–23. The GSA's audits, Crowley maintained, caused it "certain, imminent, and unrecoverable harm," Appellant's Br. 12, including: (1) significant time and expense reviewing and challenging thousands of NOCs, (2) the uncertainty of being subjected to what it characterizes as the mutually exclusive dispute resolution schemes of the Contract Disputes Act and the Transportation Act and (3) degraded performance and inability to meet the requirements of its contract with TRANSCOM, *see* Compl. ¶¶ 71, 85, 87, *reprinted in* J.A. 15, 17.

In its Prayer for Relief, Crowley sought (1) a judgment declaring that the Transportation Act does not authorize the GSA to audit the contract; (2) a judgment declaring that the GSA's NOCs, which contradict the Contracting Officer's final decisions, violate the Contract Disputes Act; and (3) an injunction prohibiting the GSA from conducting additional audits of Crowley's invoices and issuing NOCs. It expressly stated, however, that it "seeks no monetary relief . . . or other contractual remedy." *Id.* ¶ 107, *reprinted in* J.A. 20. Crowley

asserted that jurisdiction was proper in district court under 28 U.S.C. § 1331 because its action arises under the APA, 5 U.S.C. §§ 701–706. It moved for a preliminary injunction and the GSA moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. *See Crowley*, 2021 WL 4940953, at *1.

The district court granted the GSA's motion to dismiss for lack of jurisdiction and denied Crowley's motion for a preliminary injunction as moot. *Id.* at *1, *12. It concluded that it lacked subject matter jurisdiction because Crowley "has a contract dispute with the government exceeding $10,000 in value, and the forum prescribed by statute to hear such disputes is the Court of Federal Claims." *Id.* at *6. Crowley's complaint seeking declaratory and injunctive relief is "in essence" a claim for monetary relief, the district court reasoned, because the non-monetary relief Crowley seeks is "'negligible in comparison' to the uncollected contractual proceeds at issue." *Id.* at *9 (quoting *Kidwell*, 56 F.3d at 284). It reached this conclusion by comparing what it characterized as Crowley's "primary harm"—$180,000 in personnel time lost to reviewing and challenging the NOCs—to the $37 million in alleged overcharges, or what it deemed the "real amount at stake." *Id.*; *see* Compl. ¶¶ 81–82, *reprinted in* J.A. 16 ("Crowley estimates that it has already cost Crowley at least $180,000 in personnel time attempting to review, assess, and challenge the NOCs. . . . [It] has expended significant resources challenging GSA's authority to conduct audits and make determinations that are contrary to the Contracting Officer's" final decisions.).

The district court also determined that Crowley's claims are in essence contractual because the GSA's "audits have no significance outside the context of collection on the contract" and Crowley's complaint would not exist "were it not for

certain rights to payment promised in the [c]ontract." *Crowley*, 2021 WL 4940953, at \*10–11 (citing *Spectrum Leasing Corp. v. United States*, 764 F.2d 891 (D.C. Cir. 1985)). Finally, the district court rejected Crowley's *ultra vires* claim as a "side-door attempt to invoke the district court's jurisdiction" and to "escape the jurisdictional strictures imposed by the Tucker Act." *Id.* at \*11. Crowley appealed.

"In granting the [GSA's] motion to dismiss, the [d]istrict [c]ourt issued a final appealable order, which this court has jurisdiction to review pursuant to 28 U.S.C. § 1291." *Tootle v. Sec'y of Navy*, 446 F.3d 167, 172 (D.C. Cir. 2006). A district court's dismissal for lack of subject matter jurisdiction is reviewed *de novo*. *Id.* at 173. Although our review of a complaint purportedly implicating Tucker Act jurisdiction focuses on its "substance, not merely its form," *Kidwell*, 56 F.3d at 284, "where the jurisdiction of the court turns on whether the complaint seeks monetary relief, the court must generally limit itself to the four corners of the complaint," *Tootle*, 446 F.3d at 174 (citing *Wolfe v. Marsh*, 846 F.2d 782 (D.C. Cir. 1988) (per curiam)).

## II.   ANALYSIS

The United States and its agencies are generally immune from suit in federal court absent a clear and unequivocal waiver of sovereign immunity. *See Kalodner v. Abraham*, 310 F.3d 767, 769 (D.C. Cir. 2002) (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Via the APA, the Congress has provided a limited waiver of sovereign immunity for claims against the United States "seeking relief other than money damages" for persons "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Section 702's sovereign immunity waiver does not apply, however, "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."

*Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 618 (D.C. Cir. 2017) (quoting 5 U.S.C. § 702).

The Tucker Act gives the United States Court of Federal Claims jurisdiction

> to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). We have interpreted the Tucker Act "to confer exclusive jurisdiction over breach of contract claims against the United States seeking more than $10,000 in damages on the Court of Federal Claims," *Hammer v. United States*, 989 F.3d 1, 2 (D.C. Cir. 2021) (citing 28 U.S.C. §§ 1346(a), 1491(a); *Greenhill v. Spellings*, 482 F.3d 569, 573 (D.C. Cir. 2007)), and thus "to 'impliedly forbid[]' contract claims against the Government from being brought in district court under the waiver in the APA,"[5] *Perry Cap.*, 864 F.3d at 618–19 (quoting *Albrecht v. Comm. on Emp. Benefits of Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67–68 (D.C. Cir. 2004) (alteration in original)); *see also Bowen v. Massachusetts*, 487 U.S. 879, 910 n.48 (1988) (observing Claims Court's exclusive jurisdiction of Tucker Act claims seeking more than $10,000 "is not based on any language in the Tucker Act

---

[5] The Little Tucker Act "gives district courts concurrent jurisdiction with the Court of Federal Claims in most Tucker Act cases seeking less than $10,000." *Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Recs.*, 56 F.3d 279, 283 (D.C. Cir. 1995) (citing 28 U.S.C. § 1346(a)(2)).

granting such exclusive jurisdiction" and is exclusive "only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court"); *Van Drasek v. Lehman*, 762 F.2d 1065, 1071 n.10 (D.C. Cir. 1985) (noting that Claims Court's exclusive jurisdiction of Tucker Act claims is not based on text of statute, but on fact the Congress rarely grants district courts jurisdiction of such claims).

Because the Tucker Act does not expressly forbid the relief sought by Crowley, the district court correctly identified the critical overarching question to be whether the statute "impliedly forbids" such relief. *Crowley*, 2021 WL 4940953, at *6 (quoting 5 U.S.C. § 702). As explained below, we conclude that it does not and that the district court has jurisdiction of Crowley's claim under the APA.

## A.  TUCKER ACT JURISDICTION

Our longstanding test for determining whether a claim falls within the exclusive jurisdiction of the Claims Court pursuant to the Tucker Act appears straightforward. "[A]n action against the United States which is *at its essence* a contract claim lies within the Tucker Act and . . . a district court has no power to grant injunctive relief in such a case." *Megapulse*, 672 F.2d at 967 (emphasis added). Whether a claim is "at its essence" contractual for the Tucker Act "depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Id.* at 968.

In examining "the source of the rights upon which the plaintiff bases its claims," *Megapulse*'s first prong, we recognize that "[c]ontract issues may arise in various types of cases where the action itself is not founded on a contract." *Id.* (listing, as examples, "a license . . . raised as a defense in an

action for trespass, or a purchase contract . . . raised to counter an action for conversion"). But we have explicitly rejected the "broad" notion "that any case requiring some reference to or incorporation of a contract is necessarily on the contract and therefore directly within the Tucker Act" because to do so would "deny a court jurisdiction to consider a claim that is validly based on grounds other than a contractual relationship with the government." *Id.* at 967–68. Indeed, "the mere fact that a court may have to rule on a contract issue does not, by triggering some mystical metamorphosis, automatically transform an action . . . into one on the contract and deprive the court of jurisdiction it might otherwise have." *Id.* at 968. That said, we have cautioned plaintiffs that this court "prohibit[s] . . . the creative drafting of complaints," for example, by "disguis[ing]" a claim for money damages as one for equitable relief, to avoid the jurisdictional consequences of the Tucker Act. *Kidwell*, 56 F.3d at 284; *see also Megapulse*, 672 F.2d at 969. In conducting this inquiry, we "make rational distinctions between actions sounding genuinely in contract and those based on truly independent legal grounds," *Megapulse*, 672 F.3d at 969–70. We consider whether, among other factors, the plaintiff's asserted rights and the government's purported authority arise from statute, *see, e.g.*, *id.* at 969 (Tucker Act "does not necessarily apply where the government defendants are charged with having acted beyond the scope of their statutory authority"), whether the plaintiff's rights "exist[] prior to and apart from rights created under the contract," *Spectrum*, 764 F.2d at 894, and whether the plaintiff "seek[s] to enforce any duty imposed upon" the government "by the . . . relevant contracts to which" the government "is a party," *Perry Cap.*, 864 F.3d at 619.

*Megapulse*'s second prong considers "the type of relief sought." 672 F.2d at 968. Here, we are guided by our case law that has identified the "explicitly contractual remedy" of

specific performance and the "prototypical contract remedy" of money damages as types of relief that are "specific to actions that sound in contract." *Perry Cap.*, 864 F.3d at 619 (quoting *A & S Council Oil Co. v. Lader*, 56 F.3d 234, 240 (D.C. Cir. 1995)). The crux of this inquiry, however, boils down to whether the plaintiff effectively seeks to attain monetary damages in the suit. Accordingly, under the second prong of *Megapulse*, "a claim is subject to the Tucker Act and its jurisdictional consequences if, in whole or in part, it explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government."[6] *Kidwell*, 56 F.3d at 284 (citing *Megapulse*, 672 F.2d at 967–68); *cf. Bowen*, 487 U.S. at 916 (Scalia, J., dissenting) ("[D]istrict court jurisdiction is not established merely because a suit fails to pray for a money judgment." (citing cases)). Narrowing our focus further, a plaintiff does *not* "in essence" seek monetary relief "as long as [the] complaint only requests non-monetary relief that has 'considerable value' independent of any future potential for monetary relief" and "as long as the sole remedy requested is declaratory or injunctive relief that is not 'negligible in comparison' with the potential monetary recovery." *Kidwell*, 56 F.3d at 284 (citation omitted). Exclusive jurisdiction in Claims Court under the Tucker Act does not lie "merely because [a plaintiff] hints at some interest in a monetary reward from the federal government or because success on the merits

---

[6] Both parties appear to recognize that a claim must satisfy both the *Megapulse* test and the *Kidwell* test to fall within the Claims Court's exclusive Tucker Act jurisdiction and that *Kidwell*'s test for monetary relief is included in *Megapulse*'s remedy prong. *See* Appellant's Br. 31 (Crowley arguing that "a claim must be both for money and contractual" to satisfy *Kidwell* and *Megapulse* (emphases omitted)), 45 (referencing *Kidwell* monetary-relief conclusion in *Megapulse* remedy-prong analysis); Tr. of Oral Arg. at 23 (GSA stating that it "see[s] that second *Megapulse* prong and the sort of *Kidwell* test as coextensive").

may obligate the United States to pay the complainant." *Id.* (citing *Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 534 (D.C. Cir. 1988) ("It is . . . clear that a claim is not for money merely because its success may lead to pecuniary costs for the government or benefits for the plaintiff.")). "[E]ven if the plaintiff filed the complaint with an eye to future monetary awards, a district court with otherwise appropriate jurisdiction may hear the claim and grant the proper equitable relief." *Id.*

With these principles in mind, we turn to Crowley's complaint in district court to determine if it is "at its essence" a contract claim. *Megapulse*, 672 F.2d at 967.

## B. APPLICATION OF *MEGAPULSE*

### 1. Source of the Right

We begin with the source of the right upon which Crowley bases its claim. But we must first properly characterize Crowley's asserted right before we can proceed to identify its source. Crowley contends that it has the right "to be free from government action beyond [its] congressional authority," Appellant's Br. 42, and that the GSA has infringed upon this right by auditing Crowley's invoices without authority under the Transportation Act, 31 U.S.C. § 3726(b), and in violation of the Contract Disputes Act's finality clause, 41 U.S.C. § 7103(g). Compl. ¶¶ 111–22, *reprinted in* J.A. 20–21. Crowley's asserted right is clear enough on the face of the complaint. We therefore cannot agree with the district court's characterization of the right in question as Crowley's "alleged rights to certain monies." *Crowley*, 2021 WL 4940953, at \*10. Indeed, Crowley makes no claim *here* based on a right to money owed by TRANSCOM, the GSA or any other government agency under the contract. In fact, it explicitly disclaims any effort to vindicate such a right in district court. *See* Compl. ¶ 107, *reprinted in* J.A. 20 ("Crowley seeks no

monetary relief (for the offsets or otherwise) or any other contractual remedy from" the district court.).

We next identify the source of Crowley's asserted right. We conclude that the sources of Crowley's claimed right are the statutes identified in Crowley's complaint. Its claimed right sounds more in the nature of tort, *not* by virtue of its contract with TRANSCOM. To begin, Crowley "do[es] not seek to enforce any duty imposed upon" the GSA by Crowley's contract with TRANSCOM.[7] *Perry Cap.*, 864 F.3d at 619. As all agree, the GSA owes no duty to Crowley under the contract. It is neither a party to, a beneficiary of nor an assignee under the Crowley-TRANSCOM contract. And Crowley did not seek in district court an order compelling the GSA to perform or fulfill any obligations to Crowley created by the contract.

Further, determining whether the GSA infringed Crowley's rights as alleged in the complaint requires primarily an examination of the statutes the GSA has purportedly violated, not of Crowley's contract with TRANSCOM. Whether the GSA exceeded its authority to audit Crowley's invoices under the Transportation Act because Crowley is not a "carrier or freight forwarder," 31 U.S.C. § 3726(a), and whether the GSA violated the Contract Disputes Act, 41 U.S.C. § 7103(g), by contravening the TRANSCOM Contracting Officer's final decisions are not questions the district court can answer by examining a contractual promise made by the GSA to Crowley. No such promise exists, as the GSA and Crowley

---

[7] The United States has acknowledged as much in Claims Court. Defendant's Motion to Dismiss at 9, *Crowley*, No. 21-cv-1405 (PEC) (Fed. Cl. Aug. 9, 2021), ECF No. 7 ("Whatever claims Crowley may have against GSA, the law is clear that GSA's actions do not give rise to a breach of contract claim against [TRANSCOM]" and "the actions of one Government agency cannot give rise to a breach of contract claim against a different agency.").

have no contractual relationship. Rather, the district court must determine whether Crowley is a "carrier or freight forwarder" under the Transportation Act such that the GSA exercised proper authority in conducting the audits and whether the GSA did in fact violate the Contract Disputes Act as alleged. Crowley's "position is ultimately based, not on breach of contract, but on an alleged governmental . . . violation of" the Transportation Act and the Contract Disputes Act, *Megapulse*, 672 F.2d at 969; that is, its asserted right "exist[s] independently of [the] contract" with TRANSCOM, *Spectrum*, 764 F.2d at 894.

We find Crowley's claim against the GSA to fall within that category of cases identified in *Megapulse* in which "[c]ontract issues may arise" but "the action itself is not founded on a contract." 672 F.2d at 968. Specifically, we find convincing Crowley's analogy of its claim to the common law claim of tortious interference with contractual relations. *See* Appellant's Reply Br. 7 n.3; Tr. of Oral Arg. at 10 (Crowley "analogize[s] [its] case . . . to a tortious interference-type case"); *see also Megapulse*, 672 F.2d at 969 ("[P]ublic officials may become tort-feasors by exceeding the limits of their authority." (quoting *Land v. Dollar*, 330 U.S. 731, 738 (1947)). The elements of tortious interference are "substantially similar in most jurisdictions" and commonly include: "(a) a contract or valid business relationship or expectancy; (b) knowledge by the defendant of the contract or relationship; (c) intentional interference by the defendant which induces the breach of contract or relationship; (d) the absence of justification; and (e) resulting damages." 9 Stuart M. Speiser et al., American Law of Torts § 31:45 (2022) (noting that some courts do not consider breach of contract to be essential element of tortious interference claim). With the exception of damages, which Crowley explicitly disclaims in its complaint, Crowley has alleged, as part of its claim under the APA, the remaining

elements of tortious interference: it has a valid contract with TRANSCOM; the GSA knew of the contractual relationship as it sought to review Crowley's invoices for payment under the contract; the GSA intentionally interfered with the contract through allegedly unauthorized audits and the issuance of NOCs; and the GSA allegedly lacked authority for its actions under the Transportation Act and the Contract Disputes Act. The Tucker Act, however, does not extend to the Claims Court jurisdiction of tort claims.[8] 28 U.S.C. § 1491(a)(1) (granting jurisdiction for "cases not sounding in tort"). Because a plaintiff could not bring this type of tort action in Claims Court in the first place, that Court would not have exclusive jurisdiction of them. And the same goes for Crowley's analogous statutory claims.

We believe the district court made several errors in its examination of the source of the right. First, as explained, it misidentified the right Crowley sought to vindicate in its action against the GSA. *Crowley*, 2021 WL 4940953, at *10 (identifying "rights to certain monies" rather than asserted right to be free from allegedly unauthorized audits and NOCs). Next, it misinterpreted *Megapulse* to impose a "but-for" test for identifying the source of the right. *Crowley*, 2021 WL 4940953, at *11 ("[b]ut for" the GSA's withholding of payments allegedly owed to Crowley under the contract, "neither complaint [in Claims Court or district court] would exist"); *see also* Appellees' Br. 9 ("Absent its agreement with [TRANSCOM], Crowley would have no claims to assert."). Imposing such a test, however, contravenes *Megapulse*'s express rejection of the "argument that the mere existence of such contract-related issues . . . convert[s] [the] action to one based on the contract." 672 F.2d at 969. Granted, Crowley's

---

[8] The Little Tucker Act includes the same prohibition. *See* 28 U.S.C. § 1346(a)(2).

claim presupposes the existence of a contract, as without one the GSA would have no invoices to audit. But the right Crowley seeks to vindicate is not a contract right and its action in district court only "require[s] some reference to or incorporation of [the] contract." *Id.* at 968. These references to contract issues are insufficient to "deprive the [district] court of jurisdiction it might otherwise have." *Id.*

Third, the district court mistakenly relied on our 1985 *Spectrum* decision. *See Crowley*, 2021 WL 4940953, at *10; *see also* Appellees' Br. 14 ("This case resembles *Spectrum* in all relevant respects."). There, a software and hardware services provider in a contractual relationship with the GSA challenged the GSA's withholding of payment of certain invoices based on Spectrum's alleged failure to fulfill its contractual obligations. *Spectrum*, 764 F.2d at 892. Spectrum sued in district court for the GSA's alleged violations of the Debt Collection Act of 1982, 31 U.S.C. §§ 3701 *et seq.* *Spectrum* is inapposite for multiple reasons. *See infra* II.B.2. Most significantly, unlike in this case, the GSA was a party to the contract at issue in *Spectrum*, squarely indicating that the claims against the GSA in that case arose under the contract. The plaintiff in *Spectrum* sought to vindicate its right to payment under its contract with the GSA but the Debt Collection Act "confer[ed] no such right in the absence of the contract itself." 764 F.2d at 894. We concluded that the Debt Collection Act "might impose procedural requirements on the government having some impact on the contract, [but] the Act in no way creates the substantive right to the remedy Spectrum seeks." *Id.*; *see also id.* at 892 n.1 (describing Debt Collection Act's "procedures and safeguards designed to assure due process protections to delinquent government debtors and to enhance the ability of the federal government to collect its debts"). In other words, "Spectrum's right to the . . . payments arose only upon creation and satisfaction of its contract with

the government." *Id.* at 894. Crowley, by contrast, has no right to anything from the GSA *under its contract with TRANSCOM*—and certainly no right to payment—and it seeks to vindicate an entirely different sort of right from Spectrum's asserted right.

For these reasons, we conclude that the source of the right upon which Crowley bases its claim against the GSA is *not* its contract with TRANSCOM and therefore the complaint does not fall within the Claims Court's exclusive Tucker Act jurisdiction under the first prong of *Megapulse*.

## 2. Relief Sought

We turn next to "the type of relief sought." *Megapulse*, 672 F.2d at 968. We conclude that Crowley's requested declaratory and injunctive relief is "not specific to actions that sound in contract." *Perry Cap.*, 864 F.3d at 619. Crowley seeks neither the "prototypical contract remedy" of damages, *id.* (quoting *Lader*, 56 F.3d at 240), nor "the classic contractual remedy of specific performance," *Spectrum*, 764 F.2d at 894. And, critically, Crowley does not "in essence" seek more than $10,000 in monetary relief from the federal government, as the declaratory and injunctive relief sought has "considerable value" apart from and is not "negligible in comparison" to any potential monetary recovery that Crowley might obtain in other proceedings. *Kidwell*, 56 F.3d at 284.

Crowley's complaint expressly "seeks no monetary relief" or money damages. Compl. ¶ 107, *reprinted in* J.A. 20; *see also Tootle*, 446 F.3d at 174 (first examining whether complaint explicitly requests monetary damages); *Kidwell*, 56 F.3d at 284, 285 (same, stating Tucker Act applies if complaint "explicitly" seeks more than $10,000 in damages). In its Prayer for Relief, as noted earlier, *supra* at 7, Crowley seeks only declaratory and injunctive relief. Compl. Prayer for Relief

¶¶ A–C; *see also Smalls v. United States*, 471 F.3d 186, 190–91 (D.C. Cir. 2006) (consulting complaint's prayer for relief to determine remedy sought).

The resolution of our inquiry under the second prong of the test articulated in *Megapulse* accordingly turns on whether Crowley's complaint "in essence" seeks monetary relief. *Kidwell*, 56 F.3d at 284. It does not. "[M]ost importantly, the equitable relief sought by [Crowley] has significant value." *Tootle*, 446 F.3d at 174–75. Crowley put forth a host of non-monetary benefits it would attain with a ruling in its favor in district court. These include: the ability to direct its resources to fulfilling its obligations under the contract rather than analyzing and challenging tens of thousands of audits and NOCs; the certainty of knowing whether the dispute resolution procedures under the Contract Disputes Act or the Transportation Act apply; an answer to the question whether the GSA has authority to audit Crowley's invoices generated by its contract with TRANSCOM; and, perhaps most significantly, the ability to provide services to TRANSCOM and perform its contractual obligations free of the GSA's alleged interference. Compl. ¶¶ 82, 84, 85, 86, 87, *reprinted in* J.A. 16–17. The value of this non-monetary relief to Crowley's business operations and professional reputation is arguably just as considerable as the value of relief from the stigma or "shame associated with failing to receive an honorable discharge" from the military that we found sufficient to take a complaint outside the Claims Court's exclusive jurisdiction under the Tucker Act. *Kidwell*, 56 F.3d at 285 (military veteran, who did not explicitly seek monetary relief, brought APA action challenging Army Board for Correction of Military Records' refusal "to change his military files to indicate a 'medical' discharge rather than [a] general discharge" (*id.* at 281)). Indeed, continuing to operate under the cloud of the GSA's audits and NOCs—and the resulting performance difficulties it

creates—could conceivably jeopardize Crowley's ongoing contractual relationship with TRANSCOM, which runs through July 31, 2024, or its potential to win future contracts with other parties.

Moreover, "any monetary benefits that might flow if [Crowley] prevails on [its] non-monetary claims will not come from the District Court's exercise of jurisdiction." *Tootle*, 446 F.3d at 175. Again, Crowley does not ask the district court to issue an order compelling the GSA to pay or award any monetary relief whatsoever. *Cf. Spectrum*, 764 F.2d at 894 (plaintiff sought "order compelling the government to pay money owed in exchange for goods procured under an executory contract"). "[A]ny monetary recovery [Crowley] might be entitled to in the future," including in Claims Court, "would be entirely separate from" the district court's exercise of jurisdiction and award of the requested declaratory and injunctive relief. *Tootle*, 446 F.3d at 175; *Vietnam Veterans*, 843 F.2d at 534 ("claim is not for money merely because its success may lead to pecuniary costs for the government or benefits for the plaintiff"). The fact that Crowley may obtain monetary relief from the United States in Claims Court if it succeeds in its suit against the GSA in district court "is insufficient to deprive the district court of jurisdiction." *Smalls*, 471 F.3d at 190.

The district court correctly concluded that this second *Megapulse* inquiry is controlled by *Kidwell*, *Crowley*, 2021 WL 4940953, at *8, but it incorrectly applied the test we articulated there, *see id.* at *9. First, it labeled Crowley's purported expense in investigating and challenging the NOCs, which amounted to an estimated $180,000 that "cannot be recovered," as the "primary harm" redressable by a ruling in Crowley's favor. *Id.*; *see* Compl. ¶¶ 81–82, *reprinted in* J.A. 16. Although the district court acknowledged that this expense

"would *not* be compensated by any money damage award either here [in district court] or at the [Claims Court]," it nevertheless compared that figure—and only that figure—to the $37 million allegedly withheld by the GSA to conclude that the former is "negligible in comparison" to the latter and therefore "in essence" a claim for monetary relief. *Crowley*, 2021 WL 4940953, at *9 (emphasis added). In doing so, it neglected to weigh the fact that Crowley's complaint did not request *retroactive* relief for the monetary value of the time and effort spent challenging the NOCs but did, as explained above and as made clear in its Prayer for Relief, seek *prospective* relief from the GSA's audits and NOCs in the future. The district court reached its conclusion merely by calculating the ratio of the value of the NOC withholdings ($37 million) to the asserted value of the personnel time attempting to review and challenge the NOCs ($180,000)—200 to 1.[9] *Id.* But there is no support for this method of comparison in our case law. The district court cited none, *id.*, and the GSA points to none, *see* Appellees' Br. 18–19.[10]

---

[9] The district court used $187,000 in its comparison, citing to Crowley's Opposition to Motion to Dismiss. *Crowley*, 2021 WL 4940953, at *9. We have used the figure of $180,000 throughout because that is the amount Crowley uses in its complaint. *See* Compl. ¶ 81, *reprinted in* J.A. 16.

[10] The GSA relies on *Schwalier v. Hagel*, 734 F.3d 1218, 1221 (D.C. Cir. 2013), to argue that "[w]hen a plaintiff requests multiple forms of relief, courts identify the 'core' request by comparing the relative value of the monetary and non-monetary remedies." Appellees' Br. 18. The GSA's reliance on *Schwalier* is misplaced. There, the plaintiff included a request for monetary relief "on the face of the complaint" and thus we found "no need to peer deeper into [the complaint's] substance, essence, or 'core.'" *Schwalier*, 734 F.3d at 1221 (citing *Kidwell*, 56 F.3d at 284). In addition, we do not read *Schwalier* as reducing the inquiry to the computation of a ratio in this manner or, perhaps more importantly, as authorizing a district court

It also erred by characterizing the $37 million as "the real amount at stake here." *Crowley*, 2021 WL 4940953, at *9. The district court found it "difficult to see how the requested" declaratory and injunctive relief "would not effect the release of the offsets assessed by GSA to date." *Id.* But that "is not the law of the circuit." *Tootle*, 446 F.3d at 176. We have explicitly rejected a district court's conclusion that a complaint sought "in essence" monetary relief because "the plain effect of a judgment in plaintiff's favor would be a significant financial gain for plaintiff." *Id.* at 175–76 (citing district court opinion). Indeed, as we said in *Kidwell*, "[a] plaintiff does not 'in essence' seek monetary relief . . . merely because he or she hints at some interest in a monetary reward from the federal government or because success on the merits may obligate the United States to pay the complainant." 56 F.3d at 284. "[E]ven if the plaintiff filed the complaint with an eye to future monetary awards, a district court with otherwise appropriate jurisdiction may hear the claim and grant the proper equitable relief." *Id.*

Crowley does not seek money in its suit against the GSA and the district court would not award such relief were Crowley to prevail. The declaratory and injunctive relief sought has considerable value apart from and is not negligible in comparison to any potential monetary recovery Crowley may secure in Claims Court. Therefore, under *Kidwell*, Crowley's complaint does not request "in essence" monetary relief.

Crowley "has gone to great lengths to demonstrate that it is not relying on the contract at all. It does not claim a breach of contract, it has limited its request for relief" in district court to the enforcement of the GSA's statutory obligations, "it seeks no monetary damages against the United States, and its claim

---

to exclude a plaintiff's requested non-monetary relief from its analysis.

is not properly characterized as one for specific performance." *Megapulse*, 672 F.2d at 969 (footnotes omitted). In other words, neither the source of the right on which Crowley's claim is based nor the type of relief sought sounds in contract. *Id.* at 968. We conclude that Crowley "has not brought a contract action or an otherwise disguised claim for monetary relief against the United States." *Id.* at 971.

Under our precedent, the Court of Federal Claims has exclusive jurisdiction of an action pursuant to the Tucker Act only if the claim in question is "at its essence" contractual. A plaintiff satisfies this test if its asserted right is based in contract and seeks "in essence" more than $10,000 in monetary relief from the federal government. Here, neither of those conditions is met. Accordingly, jurisdiction of Crowley's action is proper in district court under the APA and the general federal question statute.[11] We therefore reverse the district court's dismissal for

---

[11] The GSA maintains that Crowley can obtain all the relief it seeks against the GSA in the Court of Federal Claims under the Transportation Act. *See* Tr. of Oral Arg. at 22; Appellees' Br. 22. Crowley disagrees. *See* Tr. of Oral Arg. at 26–27; Appellant's Reply Br. 6 ("Crowley cannot sue GSA under the Transportation Act because it does not apply."). The district court noted, albeit in dicta, that the "APA's sovereign immunity waiver does not apply if . . . some 'other adequate remedy in a court' is available," *Crowley*, 2021 WL 4940953, at *6 (quoting 5 U.S.C. § 704), and agreed with the GSA that it "has in essence laid out a blueprint for how this matter can receive a fulsome hearing" in Claims Court, *id.* at *12. Even assuming that is true, we find no reason to conclude that the Claims Court's jurisdiction in such an action would be exclusive of district court jurisdiction, as Crowley does not seek the same relief in district court as it does in Claims Court. In addition, whether another adequate remedy exists under § 704 has no bearing on our jurisdictional inquiry. We have made clear that the "adequate remedy bar of § 704" does not address "whether there is federal subject matter jurisdiction." *Perry Cap.*, 864 F.3d at 621.

lack of subject matter jurisdiction and remand for consideration of the merits of Crowley's claim.[12]

*So ordered.*

---

[12] Because we conclude Crowley's complaint can proceed in district court under Count I of its complaint, we need not address its alternative *ultra vires* claim or the district court's dismissal of that claim, *see Crowley*, 2021 WL 4940953, at *11–12.